IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

_____

| | | |
|---|---|---|
| WILLIAM SHERRATT, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 2:05-CV-885 TC |
| | ) | |
| v. | ) | District Judge Tena Campbell |
| | ) | |
| CLINT FRIEL et al., | ) | **MEMORANDUM DECISION** |
| | ) | |
| Respondents. | ) | Magistrate Judge Samuel Alba |

_____

Petitioner, William Sherratt, an inmate at Utah State Prison, requests habeas corpus relief.[1]  Because Petitioner filed his petition past the applicable period of limitation, the Court denies his petition.

BACKGROUND

Petitioner's two state judgments of conviction for rape with five-years-to-life concurrent sentences were entered March 23, 2000.  After affirmance by the Utah Court of Appeals, these convictions became final on August 27, 2001--the deadline Petitioner missed for filing a petition for writ of certiorari with the Utah Supreme Court.  Petitioner filed this federal petition on October 26, 2005.[2]

This petition raises the following grounds for habeas relief:  (1) The original criminal complaint against Petitioner

---

[1] *See* 28 U.S.C.S. § 2254 (2007).

[2] According to the State, Petitioner did not "properly file" his habeas application until November 7, 2005, when he paid the Court's filing fee. Giving Petitioner the benefit of the doubt, *for purposes of this Order only*, the Court's calculations use the October 26, 2005 date.

was unsworn.  (2) The original information charging Petitioner was unverified and unsworn.  (3) Petitioner's rights were violated when he was arraigned, bound over and taken to trial before the same judge.  (4) Petitioner received ineffective assistance of counsel, both at trial and on direct appeal. Allegations of ineffective assistance include failures to (a) raise necessity for a sworn complaint and information; (b) raise the above on appeal; (c) investigate more information about the teenaged victim's sexual history, including her confession to her church leader, and Petitioner's alibi; (d) have Brian Starkey testify to having had sex with the victim; and (e) object to the time frame shown in the bill of particulars.  (5) The prosecution altered evidence (i.e., two victim statements that did not match up), used contradictory evidence to support the probable cause statement, allowed false testimony at trial, and allowed religious beliefs to bolster witness testimony and credibility. (6) Petitioner was denied his right to religious freedom when he was convicted based on false testimony about the beliefs of the Church of Jesus Christ of Latter-Day Saints (LDS).  (7) The trial judge was biased by his LDS beliefs.  (8) The prosecution withheld *Brady*[3] evidence from Petitioner (i.e., the victim's ten-page letter about her abuse by Petitioner).  (9) New evidence

---

[3]*Brady v. Maryland*, 373 U.S. 83, 87 (1963), requires that the prosecution turn over exculpatory evidence in its possession to the defense.

showed that the victim did not confess to her LDS church leader,
as she testified.  And, (10) the prosecutor gave answers to a
potential prosecution witness the morning of trial.

PERIOD OF LIMITATION

The statute setting forth the period of limitation for
federal habeas petitions reads in pertinent part:

> A 1-year period of limitation shall apply to
> an application for a writ of habeas corpus by
> a person in custody pursuant to the judgment
> of a State court. The limitation period shall
> run from the latest of--
> (A) the date on which the judgment became
> final by the conclusion of direct review or
> the expiration of the time for seeking such
> review;
>
> . . . .
> (D) the date on which the factual predicate
> of the claim or claims presented could have
> been discovered through the exercise of due
> diligence.[4]

The Court calculates the period of limitation as to grounds
one through seven, as listed above, using subsection (A) as its
guide.  So, the Court begins with the date when the convictions
became final, August 27, 2001.  As to grounds eight through ten,
the Court uses subsection (D) as its guide.  So, the Court begins
with the date when Petitioner allegedly discovered each of these
events.  For the *Brady* evidence, it is June 2002; for the
evidence that the victim did not confess to her church leader, it
is September 1, 2002; and for the prosecution giving answers to a

---

[4]28 U.S.C.S. § 2244(d)(1) (2007).

potential witness, it is September 8, 2003.  For the sake of convenience *for purposes of this Order only*, and because it makes no difference to the final result, the Court uses just the last date, September 8, 2003, to determine the running of the period of limitation on grounds eight through ten.

By statute, the one-year period of limitation is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[5]  Meanwhile, equitable tolling is also available but "'only in rare and exceptional circumstances.'"[6]

## 1.  STATUTORY TOLLING

At separate times, Petitioner filed two different petitions for post-conviction relief in state court.  After 305 days of the 365-day federal period of limitation had ticked away as to grounds one through seven, on June 28, 2002,[7] Petitioner filed

---

[5]*Id.* § 2244(d)(2).

[6]*Stanley v. McKune*, No. 05-3100, 2005 U.S. App. LEXIS 9872, at *4 (10th Cir. May 23, 2005) (quoting *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)).

[7]According to the State, Petitioner did not "properly file" this state habeas application until August 9, 2002, when he paid the Court's filing fee. *See* 28 U.S.C.S. 2244(d)(2) (2007) (stating one-year period of limitation for filing federal habeas corpus petition is tolled while "a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending") (emphasis added)*; Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (stating that in *Artuz v. Bennett*, 531 U.S. 4, 9 (2000), the Court "explained that jurisdictional matters and fee payments, both of which often necessitate judicial scrutiny, are 'condition[s] to filing'").  However, the Court uses--to again give Petitioner every benefit of the doubt *for purposes of this Order only*--the June 28th date for calculating the running of the period of limitation.

his first state post-conviction petition.  This petition was
denied and taken through the appeals process, ending January 2,
2004.[8]  (Meanwhile, grounds eight through ten allegedly came to
Petitioner's attention by September 8, 2003.  The period of
limitation on those did not start running then, though, due to
the ongoing state habeas proceedings.)

Overlapping this petition was another petition filed October
27, 2003.[9]  This was denied on January 23, 2004.  The denial
became final on February 23, 2004, the date Petitioner missed for
filing a timely appeal.  The federal period of limitation of 365
days started running that day as to all grounds and expired as to
grounds one through seven, on April 23, 2004.  It expired one
year later as to grounds eight through ten, on February 23, 2005.
By the time Petitioner filed this federal petition on October 26,
2005, he had exceeded the period of limitation on grounds one

---

[8]Although Petitioner then filed a petition for writ of certiorari with
the United States Supreme Court, that petition does not count in the tolling
calculation.  *See Rhine v. Boone*, 182 F.3d 1153, 1156 (10th Cir. 1999) ("[W]e
hold that § 2244(d) does not direct that the statute of limitations was tolled
during the time the petition for writ of certiorari was before the United
States Supreme Court.").

[9]Again, according to the State, Petitioner did not "properly file" this
state habeas application until November 19, 2003, when he paid the Court's
filing fee.  *See* 28 U.S.C.S. § 2244(d)(2); *Pace*, 544 U.S. at 414.  However,
the Court uses--to again give Petitioner every benefit of the doubt *for
purposes of this Order only*--the October 27th date for calculating the running
of the period of limitation.

through seven by more than eighteen months and on grounds eight
through ten by more than eight months.[10]

## 2. EQUITABLE TOLLING

Petitioner excuses his failure to timely file his petition
by asserting he lacked access to a law library and legal
knowledge, and the prison contract attorney system is inadequate
and gave him misinformation about habeas filings.  He also
asserts actual innocence.  Based on these circumstances, he
argues that the Court should apply equitable tolling to rescue
him from the period of limitation's operation.

"Equitable tolling will not be available in most cases, as
extensions of time will only be granted if 'extraordinary
circumstances' beyond a prisoner's control make it impossible to
file a petition on time."[11]  Those situations include times
"'when a prisoner is actually innocent'" or "'when an adversary's
conduct--or other uncontrollable circumstances--prevents a
prisoner from timely filing, or when a prisoner actively pursues

---

[10]It is true that a Rule 60(b)(4) motion was filed on November 3, 2005,
in the first state habeas case.  This motion was denied, then taken through
the appeals process, which is apparently still pending.  However--even if a
Rule 60(b) motion operated to toll the period of limitation, which the Court
does not treat here--that proceeding is irrelevant to this analysis because it
was not filed until after Petitioner's federal time limit had already expired.
"[A] state court petition . . . that is filed following the expiration of the
federal limitations period 'cannot toll that period because there is no period
remaining to be tolled.'" *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir.
2001) (quoting *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)); *see
also Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001).

[11]*Calderon v. United States Dist. Court*, 128 F.3d 1283, 1288 (9th Cir.
1997) (citation omitted).

judicial remedies but files a defective pleading during the statutory period.'"[12]   And, Petitioner "has the burden of demonstrating that equitable tolling should apply."[13]

### A.  UNCONTROLLABLE CIRCUMSTANCES

Against the backdrop of these general principles, the Court considers Petitioner's specific arguments.  First, Petitioner asserts that his lateness should be overlooked because he lacked a law library, legal knowledge, and had only limited help and misinformation from prison contract attorneys.  The argument that a prisoner "had inadequate law library facilities" does not support equitable tolling.[14]  Further, it is well settled that "'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'"[15] Finally, simply put, "'[t]here is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance

---

[12]*Stanley*, 2005 U.S. App. LEXIS 9872, at *4 (quoting *Gibson*, 232 F.3d at 808 (citation omitted)).

[13]*Lovato v. Suthers*, No. 02-1132, 2002 U.S. App. LEXIS 14371, at *5 (10th Cir. July 15, 2002) (unpublished).

[14]*McCarley v. Ward*, Nos. 04-7114, 04-7134, 2005 U.S. App. LEXIS 14335, at *3-4 (10th Cir. July 15, 2005);*see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) ("It is not enough to say that the . . . facility lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate.").

[15]*Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (citation omitted).

of counsel in such proceedings.'"[16]  It follows that Petitioner's contention that prison attorneys' misinformation thwarted his habeas filings does not toll the period of limitation.[17]

During the running of the federal period of limitation and beyond, Petitioner took no steps himself to "diligently pursue his federal claims."  In fact, all Petitioner's excuses are undercut by the fact that he was able to file and pursue to finality two state post-conviction petitions between the time of his conviction and the time he filed this federal habeas petition.  In sum, none of the circumstances raised by Petitioner rendered it beyond his control to timely file his petition here.

### B.  ACTUAL INNOCENCE

Finally, the Court addresses Petitioner's contention that the period of limitation should be tolled because he is actually innocent.  "[T]o claim actual innocence a petitioner must present new, reliable evidence that was not presented at trial.  Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

---

[16]*Thomas v. Gibson*, 218 F.3d 1213, 1222 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted)); *see also* 28 U.S.C.S. § 2254(i) (2007) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

[17]*See Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling.").

evidence.'"[18]  Further, this evidence must "affirmatively demonstrate[ the petitioner's] innocence," not just "undermine the finding of guilt against him."[19]  After presenting such evidence, a petitioner must then "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'"[20] Such evidence is so very rare, though, that "'in virtually every case, the allegation of actual innocence has been summarily rejected.'"[21]

Beyond this, "Tenth Circuit authority provides that claims of actual innocence alone cannot serve to toll the limitations period.  The record must also demonstrate that the habeas petitioner has pursued his claims diligently but has been prevented from filing a timely petition due to extraordinary circumstances."[22]

---

[18]*Rose v. Newton-Embry*, No. 05-6245, 2006 U.S. App. LEXIS 22713, at *4-5 (10th Cir. Sept. 5, 2006) (unpublished) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)), *cert. denied*, 127 S. Ct. 2039 (2007).

[19]*Green v. Kansas*, No. 06-3118, 2006 U.S. App. LEXIS 20046, at *8 (10th Cir. Aug. 3, 2006) (quoting *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (internal citations & quotations omitted)).

[20]*See Rose*, 2006 U.S. App. LEXIS 22713, at *5 (quoting *Schlup*, 513 U.S. at 329).

[21]*Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted).

[22]*York v. Jordan*, No. 05-CV-021-JHP-FHM, 2006 U.S. Dist. LEXIS 17323, at *7 (N.D. Okla. Mar. 23, 2006) (citation omitted); *see also Thompson v. Simmons*, No. 98-3270, 1999 U.S. App. LEXIS 10999, at *4 (10th Cir. May 28, 1999) (unpublished) ("While we have intimated actual innocence may be grounds for equitable tolling under § 2244(d)(1), we have emphasized that prisoners must diligently pursue their claims to avail themselves of equitable tolling.").

First, two of the circumstances Petitioner raises to support his declaration of actual innocence are not new:  the vaguely referred to "false testimony" at trial and Mr. Starkey's admission of "his involvement" to a defense investigator before trial.  These circumstances, therefore, out of hand, do not sustain Petitioner's assertion of actual innocence.

Second, other "new evidence" Petitioner cites to support his actual-innocence claim may be classed as impeachment evidence. These are the "*Brady*" evidence, which apparently is the victim's ten-page letter retained by the prosecution and allegedly showing discrepancies in her earlier story when compared with her testimony (Petitioner says he got this in June 2002); Mr. Starkey's confession to a fellow inmate of sexual involvement with the victim (Petitioner says he got this after his first state habeas filing, in summer of 2002); and an affidavit of a next-door neighbor to one of the crime scenes, stating that the only access to the scene was blocked by a trailer.[23]

"This impeachment evidence provides no basis for finding a miscarriage of justice" based on actual innocence.[24]  As in

---

[23]The latter evidence of lack of access to one of the crime scenes could also be rejected as old, not new, evidence.  This is because trial witnesses who presumably would have been at the crime scene--Petitioner and/or the victim--would have known whether there was access or not.  One or both of them would have been there.

[24]*Calderon*, 523 U.S. at 563; *see also Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) ("This sort of latterday [*Brady*] evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account . . . .").

*Calderon*, "the evidence is a step removed from evidence pertaining to the crime itself."[25]  It tends only to try to impeach witness credibility or merely to try to raise some suspicion or doubt of Petitioner's guilt.[26]  To determine that this allegedly new evidence would have "in all probability . . . altered the outcome of [Petitioner's] trial, [this Court] should have to assume, first, that there was little evidence of rape apart from the [victim's] testimony; and, second, that the jury accepted the [victim's] testimony without reservation."[27]  The first assumption is discredited by evidence found in the trial transcript.[28]  Although this was in many ways a he-said-she-said case, a thorough review of trial transcripts reveals that there other witnesses' testimony definitely corroborated the victim's testimony.  The second assumption is refuted by the considerable impeachment evidence the Petitioner's attorney did present.[29]  Petitioner's defense attorney specifically brought discrepancies between the victim's past statements and her trial testimony to the jury's attention many times.

---

[25] *See Calderon*, 523 U.S. at 563.

[26] *See id.; Stafford v. Saffle*, 34 F.3d 1557, 1561 (10th Cir. 1994).

[27] *See Calderon*, 523 U.S. at 563.

[28] *See id.*

[29] *See id.*

11

Finally, other "new evidence" Petitioner alleges shows his actual innocence are (1) the disclosure of a woman, who was to be a trial witness, that the prosecution fed her answers to repeat during future testimony (which was not known to Petitioner until July 2003) and (2) a state judge's "finding of fact" in a Rule 60(b) ruling that "proves" that the original probable cause statement and complaint were unsworn.

First, as to the would-be witness who was fed answers, her sworn affidavit, which Petitioner provided this Court, states the circumstances of these allegations and concedes, "I was not called to testify at the trial at any time."  There was thus no prejudice to Petitioner from the prosecution's alleged wrongdoing.  Consequently, this "new evidence" would not meet the standard of changing the mind of a reasonable juror.

Second, the "new evidence" of the state judge's "finding of fact," in his 2006 decision rejecting Petitioner's Rule 60(b) challenge, that the original probable cause statement and complaint were unsworn does not help Petitioner.  The decision's statement of facts specifically states, "*For purposes of considering the Petitioner's pending motion only*, the court considers the following facts to have been established by the record in this matter . . . ."  (Emphasis added.)  With that disclaimer, the court stated, "There is no indication in the document that the Probable Cause Statement was 'sworn.'"

However, the court continues by pointing out that, on January 24, 2003, the Utah Court of Appeals affirmed dismissal of Petitioner's first state habeas petition, stating it rejected Petitioner's jurisdictional challenge because in an earlier pleading "Petitioner acknowledged that the prosecutor swore to the information.  Moreover, 'defects . . . in the charging information . . . were waived when they were not brought to the attention of the trial court prior to the trial.  Therefore, the district court did not err by dismissing Petitioner's jurisdictional claim."  The Utah Supreme Court denied a petition for writ of certiorari on this matter.  Obviously, the state trial court in its Rule 60(b) decision accepted the court of appeals' and the supreme court's determination rejecting Petitioner's challenge to the state court's jurisdiction based on the lack of a sworn information and complaint.  When the trial court did say there was "no indication the Probable Cause Statement was 'sworn,'" it clarified that it was stating that for purposes of that one order only.  There is no new evidence here.

Beyond all this, an allegation of actual innocence, as stated above, may not stand alone to toll the period of limitation.  Petitioner must also show that he diligently pursued his claims.[30]  The record here does not bear out such diligence.

---

[30]*York*, 2006 U.S. Dist. LEXIS 17323, at *7; *see also Thompson*, 1999 U.S. App. LEXIS 10999, at *4.

Every instance of "new evidence" alleged by Petitioner was brought to his attention long before he filed this federal habeas petition.  As mentioned earlier, two of the incidents--false trial testimony and Starkey's "involvement"--are not new evidence at all.  Further, Petitioner knew about the *Brady* evidence in June 2002, Starkey's "confession" after his first state habeas filing in summer 2002, the neighbor's affidavit on September 19, 2002, and the would-be witness's disclosure in July 2003.  These were all available to Petitioner during his state habeas processes, which ended on April 23, 2004.  Yet, Petitioner did not bring this federal petition until over eighteen months later. This lack of diligence alone convinces this Court to refuse Petitioner's quest for application of the actual-innocence doctrine to effect his freedom from further confinement.

CONCLUSION

Accordingly, the current petition before the Court was filed past the one-year period of limitation.  And, it appears neither

statutory exceptions nor equitable tolling, including

Petitioner's allegation of actual innocence, apply to save

Petitioner from the period of limitation's operation.

IT IS THEREFORE ORDERED that this petition is denied because

it is barred by the applicable period of limitation.

DATED this 24th day of September, 2007.

BY THE COURT:

_Tena Campbell_

TENA CAMPBELL
Chief Judge